# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## SALLY LUEDTKE V. JOSEPH PHILLIPS, AN INDIVIDUAL, AND ARCHIE SPIERS AND ALLAN SPIERS, ETC.

November 21, 1949.

Record No. 3529.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Montague, Ferguson & Holt,* for the plaintiff in error.

*Phillips, Marshall & Blalock,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff below, Mrs. Luedtke, plaintiff in error here, recovered a verdict against the defendant, Phillips, for injuries sustained when a wall cabinet full of dishes fell and struck her in the kitchen of an apartment rented by her from Phillips. The court set aside this verdict and entered judgment for the defendant. This is the error assigned.

The apartment was one of several in a building in Newport News owned by Phillips. Mrs. Luedtke had been a tenant there for some time, first in Apartment 4. In September, 1944, she rented and moved into Apartment 8, under a written lease, by the terms of which she agreed to assume all risks to person or property due either to latent or patent defects in the premises, whether known to Phillips or not; and there was no duty on Phillips to make repairs.

While Mrs. Luedtke was occupying Apartment 8, a kitchen was added to Apartment 7, then occupied by others. When Mrs. Luedtke learned of that she asked Phillips also to add a cabinet for dishes and then to let her have Apartment 7 when it became vacant. This was agreed. Phillips bought a wooden cabinet weighing about fifteen pounds and took it to the apartment in his car. A plumber was there, an employee of the Spiers firm, engaged in installing heating and plumbing in the new kitchen. Phillips left the cabinet there and told the plumber he would get somebody to put it up. Later the plumber, having some spare time while waiting for the heating system to drain, on his own initiative attached the cabinet to the wall above the sink, which Mrs. Luedtke said was the only suitable place for it. This was done by means of inserting screws about two and one-half inches long through holes at the back of the cabinet for that purpose. When Phillips came back and found the cabinet installed, he took hold of it, shook it and it seemed to be all right; so he thanked the plumber for his good work.

This occurred in August or September, 1945. Mrs. Luedtke moved into this Apartment 7 in March or April, six or seven months later. She occupied and used the apartment from that time until the accident happened in September, 1946, five or six months after she moved into the apartment, and about a year after the cabinet had been installed.

Plaintiff's action was against Phillips, her landlord, on the ground that he permitted the cabinet to be attached to the wall in a negligent manner; and also against the Spiers firm, employers of the plumber, for his negligence in putting it up. The evidence against the employers was struck out and there was a verdict in their favor, about which no complaint is made.

In her brief plaintiff claims that there was a conflict in the evidence as to whether her written lease on Apartment 8 was to apply to Apartment 7, and that this conflict was resolved against the defendant by the verdict. If such conflict exists in the evidence, it is quite elusive. There was no

new lease executed for Apartment 7, it is true, but the defendant testified positively that it was agreed that the lease on Apartment 8 would apply. The plaintiff also testified that Phillips told her the lease she had on Apartment 8 would apply to Apartment 7; that the same rent and the same lease would apply. At another point in her testimony she said it was agreed that the "same terms" would apply. The quoted phrase is the only discernible basis for the claim that there was any conflict on the point.

The case against Phillips was submitted to the jury on the question of whether he was chargeable with negligence in the installation of the cabinet. After the verdict the trial court concluded that the case was governed solely by the law of landlord and tenant and that hence the verdict should be set aside and a new trial had consistent with that law. Plaintiff's counsel then stated he had no other evidence to present and accordingly judgment was entered for the defendant.

As we view the matter, the result is the same whether the rights of the parties are governed by the terms of the written lease on Apartment 8, by which the plaintiff agreed, as stated, to assume the risk, or by the rules of law applicable as between landlord and tenant without such an agreement.

The plaintiff concedes that she was not a tenant of Apartment 7 at the time the cabinet was installed. The evidence shows, without dispute, that the cabinet was installed in that apartment several months before the plaintiff's tenancy began, and that she continued in the sole occupancy of the apartment for five or six months after her tenancy began before the cabinet fell. It is not contended that there was any agreement that the landlord was to keep the premises in repair, nor is it contended that he was guilty of any fraud or concealment with respect to the alleged defect. He did not know about it. He examined the cabinet after it was put up and it appeared to him to be all right. The plaintiff had a better opportunity than he had to ascertain that it was not fastened to the wall securely enough to hold the

dishes that she put into it before it fell. One of her witnesses testified that it was quite full and that he had to have the help of two ladies to move it off the floor.

The law as thus stated in *Caudill* v. *Gibson Fuel Co.*, 185 Va. 233, 38 S. E. (2d) 465, is applicable to the facts, and is controlling:

"* * * Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are practically agreed that, in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant, the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein. * * *" 185 Va. at pp. 239-40, 38 S. E. (2d) at p. 469.

It was further held in that case that a lessor is under no implied covenant to repair or keep in repair the demised premises; and it was stated that a majority of the courts hold that the failure of the landlord to keep his promise to repair property in possession and control of the tenant does not impose upon him any liability in tort. See *Newman* v. *Early*, 176 Va. 263, 10 S. E. (2d) 885; *Berlin* v. *Wall*, 122 Va. 425, 95 S. E. 394, L. R. A. 1918 D, 161; but see Annotation, 163 A. L. R. at p. 300, stating that the present trend of decision is away from the former majority view on the latter point.

"The logical conclusion from the principle that the landlord is under no implied obligation as to the condition of the demised premises or as to the repair of defects therein is that the landlord is not responsible to the tenant for injuries to person or property caused by defects in the demised premises where the landlord has not made any warranty or contract as to the condition of the demised premises or as to the repair of defects and is guilty of no wilful wrong or fraud. * * *" 32 Am. Jur., Landlord and Tenant, sec. 662, pp. 526-7, and cases cited. See to the same effect 52 C. J. S., Landlord and Tenant, sec. 417a(1), p. 12; *Ackarey* v. *Carbonaro*, 320 Mass. 537, 70 N. E. (2d) 418;

*Korach* v. *Loeffel*, 168 Mo. App. 414, 151 S. W. 790; *Price* v. *Pocahontas Fuel Co.*, 49 F. (2d) 39; *Yarbrough* v. *Booher*, 141 Tex. 420, 174 S. W. (2d) 47, 150 A. L. R. 1369.

The case of *Tugman* v. *Dan River Cotton Mills, Inc.*, 144 Va. 473, 132 S. E. 179, relied on by the plaintiff, is not in conflict with the rule stated above, but is not in point here. There the tenant was already in possession when the landlord entered to build a fence. One of the holes dug for setting posts was left uncovered and unprotected. It rained and this hole became partially filled with water. A very young child of the tenant fell into the hole and was injured. It was held that the case was unaffected by the doctrine of landlord and tenant; that the liability of the defendant did not grow out of any act of the defendant as landlord, but out of a positive act of negligence on its part, for which it was liable. This distinction is everywhere recognized, and courts generally hold that if the landlord, after he has delivered possession to the tenant, enters to make repairs, whether voluntarily or by agreement, he must use reasonable care in making them. *Marks* v. *Nambil Realty Co.*, 245 N. Y. 256, 157 N. E. 129; *Bartlett* v. *Taylor*, 351 Mo. 1060, 174 S. W. (2d) 844; 32 Am. Jur., Landlord and Tenant, sec. 678, p. 547; 52 C. J. S., Landlord and Tenant, sec. 417c(1), p. 41; Annotation 150 A. L. R. at p. 1373.

The evidence in this case affords no ground for a recovery by the plaintiff and the judgment of the trial court is accordingly

*Affirmed.*